# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| JOHN S. LEIGH, ] | |
| ] | |
| Petitioner, ] | |
| ] | |
| vs. ] | 1:10-cv-2762-JHE |
| ] | |
| JOHN RATHMAN AND ] | |
| HARLEY LAPPIN, ] | |
| ] | |
| Respondents. ] | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a petition for a writ of habeas corpus, brought by petitioner, John S. Leigh ("Leigh"), pursuant to 28 U.S.C. § 2241.  At the time that he filed his petition, Leigh was incarcerated at the Federal Correctional Institution at Talladega, Alabama ("FCI Talladega").  (Doc. 5 at 1).  In his petition, Leigh names as respondents the Warden of FCI Talladega, John Rathman ("Rathman"), and the Director of the Federal Bureau of Prisons ("BOP"), Harley Lappin ("Lappin"). (Doc. 5).  Leigh seeks expungement of eighteen (18) Incident Reports issued during his incarceration at FCI Talladega.[1]  (*Id.* at 6).  The petition also challenges Leigh's February 8, 2010 prison disciplinary conviction for possession of a weapon, for which he was sentenced to 30 days of disciplinary segregation, 60 days impoundment of personal property, and for which he lost 120 days of visiting privileges and 40 days of good conduct credit.  (Doc. 9-4 at 4).

In support of his petition, Leigh claims that he was denied due process when: (1) the Unit

---

[1] Specifically, Leigh challenges the violations alleged in, and sanctions imposed as a result of FCI Talladega Incident Report ##: 1940756, 1766683,1745372, 1736751, 1681591, 1652025, 1634535, 1623427, 1574672, 1540884, 1546564, 1490762, 1451517, 1382716, 1313516, 1313527, 1230450, and 1164399.

Discipline Committee ("UDC") hearing was not held within 72 hours of the time that written notice was received; (2) Leigh's requested staff representative was not permitted to participate in the UDC hearing; (3) Leigh was not permitted to call requested witnesses; (4) Leigh was not provided a copy of the UDC findings; (5) the UDC hearing was not conducted by three of Leigh's unit team staff members; (6) the Discipline Hearing Officer ("DHO") relied upon insufficient evidence to find Leigh guilty; (7) the DHO was not certified, fair, and impartial; and (8) the DHO did not issue findings within 10 days. (Doc. 5 at 6).

In response to the Court's order to show cause, Rathman filed a response in which he contends that Leigh did not exhaust the administrative remedies available in seventeen (17) of the eighteen (18) incident reports identified in the petition. (*See generally* Doc. 9). As to the one incident report for which Leigh did exhaust his administrative remedies, Rathman argues that the petition lacks merit and is due to be denied. (*Id.*). By order of the Court, the parties were advised that Rathman's response would be treated as a motion for summary judgment. (Doc. 10). The order further: (1) advised Leigh of his right, within 28 days, to file affidavits and other evidence to establish genuine issues of material precluding dismissal; and (2) informed Leigh of the possible consequences of failing to respond. (*Id.*). Leigh has filed nothing in opposition to Rathman's response.

I.      OPERATIVE FACTS

The evidence establishes—and Rathman concedes—that Leigh exhausted the administrative remedies available through the BOP regarding Incident Report # 1940756. (Doc. 9-2 at 3). Specifically, Leigh sought and completed the three-tiered administrative review process, culminating with a written appeal to the BOP's Office of General Counsel ("General Counsel"), on four of the

grounds asserted in the instant petition: (1) that he was not permitted the staff representative that he requested; (2) that he was not permitted to call the witness he requested; (3) that he was not provided a copy of the UDC findings; and (4) that the DHO relied upon insufficient evidence. (*Id.* at 14-17). Likewise, Leigh did pursue administrative remedies regarding two of the incident reports identified in the petition: Incident Report ## 1766683 and 1736751. (*Id.* at 4-5). However, regarding these two incident reports, Leigh did not complete the final step of the administrative review process by appealing to the General Counsel. (*Id.*). Finally, Leigh did not pursue any formal administrative remedies regarding the remainder—and vast majority—of the incident reports specified in the petition. (*Id.* at 4).

Regarding the substance of Incident Report # 1940756—the incident for which Leigh exhausted his administrative remedies—the evidence establishes that, during an inspection of Leigh's cell at approximately 9:30 a.m. on November 6, 2009, FCI Talladega Correctional Counselor R. Rowan ("Mr. Rowan") found two sharpened metal rods hidden behind a window grate in the cell's common area. (Doc. 9-3 at 1). Leigh shared the common area of the cell with another inmate, Donte Allen. (*Id.*). A copy of the Incident Report indicates that it was delivered to Leigh by Lieutenant Davis at 8:50 a.m. on November 7, 2009. (*Id.*). When Lieutenant Davis delivered the Incident Report, Leigh was provided the opportunity to list witnesses and/or facts, but he declined to do so. (*Id.* at 2). Lieutenant Davis recommended that the incident report be forwarded to UDC/DHO for further investigation. (*Id.*) On November 9, 2009, at approximately 2:15 p.m., the UDC, consisting of two staff members, held a hearing and referred the case to the DHO without making any findings. (*Id.* at 1; Doc. 9-2 at 15). After receiving the Notice fo Discipline Hearing before the DHO, Leigh denied the allegations and requested: (1) a staff representative; (2) that a

video tape of the incident be preserved; and (3) that Donte Allen and two FCI Talladega Correction Officers, Lieutenants Fals and Bowns, appear as witnesses at the DHO hearing. (Doc. 9-5 at 2-3).

On December 22, 2009, the DHO conducted a hearing at which Leigh and his requested Staff Representative appeared. (Doc. 9-4 at 1). Two of the witnesses requested by Leigh did not appear. (*Id.* at 2). Lieutenant Bowns did not appear because he was not present at work on the day of the incident. (*Id.*). Leigh's cell-mate, Donte Allen, did not appear due to "security reasons," but he did provide a statement to the DHO. (*Id.*) The DHO found that Leigh was guilty of possessing a weapon, and stated the specific evidence relied upon to support this finding:

> The DHO found that on or about November 16, 2009, you committed the prohibited act of Code 104, Possession of a weapon or sharpened instrument. The finding is based on the written statement of R. Rowan, Correctional Counselor, that on November 6, 2009, at approximately 9:30 a.m., he searched your assigned cell (A04-004), and found a paper sheath with a string attached to it. He retrieved it from behind the metal grate and opened it and found two metal rods, black in color, approximately six inches long, and sharpened on the ends.
> The DHO relied upon as evidence, the statement of inmate Allen, who stated he guess[es] it is a fact that the weapon was found in the room, but that he did not think it belonged to you. He said the weapon did not belong to him. He said he [ ] never saw you with any contraband.
> You denied the charge and said when you moved in the cell bugs were in the window sill and a grate was over it. You said you asked staff if it could be cleaned. You said Ms. Hines and Ms. Kennedy were searching the cell when you went to the room. You said you had been in the room since May and the incident occurred in November. You said you did not know how the weapon got in your room.
> Based on the greater weight of evidence, which is the statement of the reporting officer, and the evidence presented, the DHO finds you committed the prohibited act of Code 104, Possession of a weapon or sharpened instrument. The finding is based on some facts, which is the statement of Mr. Rowan, that on November 6, 2009, he found two metal rods, black in color, approximately 6" long, and sharpened to the end. They were inside a paper sheath, attached to a string. You denied the charge and said you did not know how the rods got there.
> The DHO considered you statement, but found the statement of the reporting to be more credible. Specifically, Mr. Rowan said he found the two metal rods . . . while searching your cell. Although you denied the charge, you provided no evidence the weapon(s) did not belong to you or that you did not know about them.

>    The DHO believes you are denying the charge as you did not want to be held accountable for your actions.  Additionally, the weapon(s) were hidden and had a piece of string attached to them so that they could be easily accessible.  You stated when you moved in the room, there were bugs in the window sill.  It is your responsibility to ensure your room remain[s] clean.  You said you asked staff to get it clean, however, you should have ensured you wiped it out after you saw it was dirty.  Additionally, it was found in the common area of the cell and you are responsible for items found in your room.  It is your responsibility to ensure your room is free of any type of contraband.  Although you said you had words with staff, this is no reason for them to act in an unprofessional manner or for staff to lie about the incident.  Also, based on the statement of your staff representative, your room had been searched before you moved in the cell.  Staff would have found the weapon if it was there.  Additionally, Mr. Bowns told her your room was always searched as you and your room mate would go to recreation, and they would search it when you were out of the room.  Also, you have in the past been found guilty of possession of a weapon.  Also, based on the statement of Mr. Fals, although he was not in the room when the weapon/sharpened instrument was found, Mr. Rowan showed it to him.  This corroborates the statement of Mr. Rowan that the weapon/sharpened instrument was found in your cell.
>    The DHO considered the statement of your staff representative, however, a sharpened rod, which could be used as a weapon was found in the common area of your cell.  You are responsible for items found in your cell.
>    The DHO believes the written report, and the evidence presented, provides some evidence to indicate you committed the prohibited act.

(Doc. 9-4 at 3).

As a result, Leigh was sanctioned to 30 days of disciplinary segregation, 120 days loss of visiting privileges, 60 days impound of personal property, and 40 days loss of good conduct time.

(*Id.* at 4).  The DHO offered the following reasons for imposing the sanctions:

>    Possession of a weapon/sharpened instrument will not be tolerated in the correctional environment.  It can have extremely serious repercussions for both staff and inmates, since it tends to result in further disruptive and violent behavior.  The sanction of disciplinary segregation for 30 days is imposed to punish you for your actions.  The sanction of disallowance of 40 days good conduct time is imposed as an immediate sanction to show you that this type of offense is of a serious nature and merits serious sanctions.  The sanctions of loss of visiting privileges for 120 days and impound of personal property for 60 days are imposed to impress upon you the fact that you are expected to adhere to all the rules and regulations of the institution.  The DHO feels the loss of these privileges will have a more significant impact upon your future

behavior.

*Id.*

On this record, the Court considers Leigh's petition.

## II. DISCUSSION

As an initial matter, Leigh's petition names both Rathman, the Warden at FCI Talladega, and Lappin, the Director of the BOP. The only proper respondent in a federal habeas case is the petitioner's immediate custodian. *Rumsfeld v. Padilla,* 542 U.S. 426, 434-35 (2004). As the Director of the Federal Board of Prisons, Lappin has never been Leigh's immediate custodian. *See id*. Accordingly, all claims asserted against Lappin are due to be dismissed. Additionally, as explained below, the remainder of Leigh's petition is due to be dismissed because: (1) this Court lacks subject matter jurisdiction to hear claims for which Leigh did not exhaust his administrative remedies; and (2) the disciplinary proceedings regarding Incident Report # 1940756 did not violate Leigh's right to due process. Each conclusion is discussed in turn, *infra.*

### A. Exhaustion of Administrative Remedies

"Prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements." *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004); *Martin v. Zenk*, 244 Fed. Appx. 974, 977 (11th Cir. 2007). Moreover, a federal court lacks subject matter jurisdiction to hear a prisoner's § 2241 petition where the prisoner has not exhausted administrative remedies prior to filing the petition. *Martin*, 244 Fed. Appx. at 977; *Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992); *United States v. Lucas*, 898 F.2d 1554, 1556 (11th Cir. 1990); *United States v. Mitchell*, 845 F. 2d 951, 952 (11th Cir. 1988).

The Code of Federal Regulations sets forth the BOP's Administrative Remedy Program for

inmates. *See* 28 C.F.R. § 542.10 *et seq*. (2003). The regulations provide that the inmate must first pursue informal resolution of his complaint. *Id.* at § 542.13. If the inmate is dissatisfied with the informal procedures, he must file a written administrative remedy request with the Warden of the facility where the inmate is confined. *Id.* at § 542.14. If the inmate is dissatisfied with the Warden's response, he may appeal to the Regional Director. *Id.* at § 542.15. The inmate may appeal the Regional Director's response to the General Counsel. *Id*. Upon appeal to the General Counsel, the inmate has exhausted his administrative remedies. *Id*.

Here, to the extent that Leigh's petition attempts to challenge the incident reports for which Leigh did not exhaust his administrative remedies—and in many cases, for which he did not pursue them in the first instance—this Court lacks jurisdiction to hear these claims. As such, this Court's jurisdiction is limited to Leigh's claims arising from Incident Report # 1940756, which is the only incident for which Leigh exhausted his administrative remedies.

For the reasons stated, the Court will dismiss the portions of the petition challenging the incident reports for which Leigh did not exhaust his administrative remedies.

      **B.**      **Leigh's Due Process Claims**

"The federal courts cannot assume the task of retrying all prison disciplinary disputes." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981), *cert. denied*, 455 U.S. 992 (1982). Likewise, absent circumstances not present here, courts generally defer to the corrections officials' determinations regarding disciplinary actions. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 540-41 n.23 (1970). Instead, when reviewing claims involving prison disciplinary proceedings, a federal court is limited "to determin[ing] whether an inmate receive[d] the procedural protections provided by *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974),] and whether 'some evidence' exists which supports the hearing

officer's determination." *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994), *cert. denied*, 524 U.S. 1054 (1995).

In *Wolff v. McDonnell*, the Supreme Court set forth the following minimum due process requirements to be afforded prisoners facing disciplinary proceedings that could result in the loss of a protected liberty interest such as good time credits: (1) "written notice of the charges must be given" to the inmate at least 24-hours in advance of the proceeding; (2) the inmate "should be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) the inmate must be given "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff*, 418 U.S. at 564-66.

In the instant case, the undisputed facts establish that the disciplinary proceedings associated with Incident Report # 1940756 complied with the due process requirements set forth in *Wolff*. First, while the petition is silent on the matter, the facts establish that Leigh received written notice of the charges more than 24 hours before the proceedings. Next, the undisputed facts establish that Leigh received the DHO report, which described the "evidence relied on and reasons for the disciplinary action." *Wolff*, 418 U.S. at 564-66. The DHO report, quoted extensively, *supra*, clearly satisfies these requirements.

Finally, the petition contends that Leigh was not permitted to call witnesses he requested. Of the three witnesses requested by Leigh, only Lieutenant Fals appeared and testified at the hearing. (Doc. 9-4 at 2). Lieutenant Bowns did not testify at the DHO hearing because he submitted an affidavit that he was not at work at FCI Talladega on the day of the incident. (*Id.*). Citing "security reasons," the DHO did not call Leigh's cell-mate, Donte Allen. (*Id.*). However, Allen gave a

statement to the DHO and Leigh was advised of that statement. (*Id.*). Accordingly, the only witness present on the day of the incident who was not allowed to appear at the DHO hearing was Donte Allen. While the minimum due process requirements set forth in *Wolff* afford inmates the right to call witnesses of their choosing, *Wolff* explicitly carves out an exception for witnesses whose appearance at the hearing would be "unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566. Here, in electing not to call Donte Allen as a witness, the DHO cited security concerns; in doing so, the DHO's refusal to call Donte Allen did not violate the due process requirements imposed by *Wolff*. Moreover, the DHO considered Donte Allen's statement and advised Leigh of the statement. Simply put, the DHO's refusal to call all of Leigh's requested witnesses did not violate his due process rights. Accordingly, the undisputed facts establish that the disciplinary process associated with Incident Report # 1940756 did not violate Leigh's due process rights, as set forth in *Wolff*.

Examining the petition's remaining unaddressed claims leads to the same conclusion.[2] First, the petition states claims for a number of supposed due process infringements that clearly do not violate the minimum due process requirements set forth in *Wolff*, including that: (1) the UDC hearing was not held within three days; (2) the UDC hearing was not conducted by three members of Leigh's

---

[2] Additionally, as argued in Rathman's Response, Leigh's administrative appeal set forth only four issues asserted in the petition : (1) that Leigh was not permitted the staff representative he requested; (2) that Leigh was not permitted to call witnesses he requested; (3) that Leigh was not provided a copy of the UDC findings; and (4) that the DHO relied upon insufficient evidence for a finding of guilt. Accordingly, Leigh has only exhausted his administrative remedies as to these claims, and not to the claims brought for the first time in the petition, which are that: (1) the UDC hearing was not held within three days; (2) the UDC hearing was not conducted by three members of Leigh's unit team; (3) the DHO was not certified, fair, and impartial; and (4) the DHO did not provide its findings within 10 days. Leigh's failure to exhaust his administrative remedies as to these portions of his petition provides an independently sufficient ground for dismissal of these claims. *See Jones v. Bock*, 549 U.S. 199, 127 (2007); *Rhines v. Weber*, 544 U.S. 269, 278 (2005). Nonetheless, the merits of each claim asserted in Leigh's petition are addressed.

unit team; and (3) the DHO did not provide its findings within 10 days. Even assuming these allegations are true, they do not run afoul of *Wolff*. Accordingly, these claims are due to be dismissed.

Next, the petition alleges that Leigh was denied the staff representative he requested. However, the undisputed evidence shows that the staff representative requested by Leigh attended and participated in the DHO hearing. Additionally, even if the DHO had prevented Leigh's requested staff representative from attending the hearing, this would not violate the rights annunciated in *Wolff*. Accordingly, these claims are due to be dismissed.

Next, Leigh contends that he was not provided with a copy of the UDC findings. However, the undisputed facts establish that the UDC did not make any findings, instead referring the matter to the DHO for further proceedings. Furthermore, Leigh was provided with a copy of the DHO report, quoted *supra*. Accordingly, the due process requirements of *Wolff* were satisfied, and these claims are due to be dismissed.

Next, Leigh alleges that the DHO was not certified, fair, and impartial. However, Leigh has submitted no evidence to support this claim and has not opposed Rathman's response, despite being warned of the potential consequences. Additionally, there is nothing in the record lending credence to this allegation. Rather, this claim consists entirely of the type of conclusory allegations that do not entitle a petitioner to habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

Finally, Leigh alleges that the DHO relied upon insufficient evidence for a finding of guilt. However, the Court must uphold a disciplinary decision if "some evidence" exists which supports the hearing officer's determination. *Superintendent v. Hill,* 472 U.S. 445, 455 (1985).[3] As set forth

---

[3] The standard of proof required for a finding of guilt in prison disciplinary proceedings "is necessarily lower than that demanded in criminal, parole-probation, revocation or civil proceedings."

in the DHO report, in finding that Leigh was guilty of possessing a weapon, the DHO relied, *inter alia*, upon the statement of a FCI Talladega corrections officer, the fact that the weapon was found in the common area of Leigh's cell, and the fact that Leigh had previously been found in possession of a weapon. This constitutes "some evidence," thus satisfying the standard applicable to Leigh's petition. Accordingly, these claims are due to be dismissed.

### III. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Based on the foregoing, it is RECOMMENDED that this § 2241 habeas action is due to be DISMISSED.

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the Clerk of this Court. Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). In order to challenge the findings of the magistrate judge, a party must file with the Clerk of the Court written objections which shall specifically identify the portions of the proposed findings and recommendation to which

---

*Rabalais*, 659 F.2d at 546. "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

> Th[e "some evidence"] standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, *the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board*. . . . Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. . . . The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id*. at 455-56 (citations omitted) (emphasis added).

objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk of Court is **DIRECTED** to serve a copy of this report and recommendation upon Leigh.

DONE this 22nd day of October, 2013.

_____
PAUL W. GREENE
U.S. MAGISTRATE JUDGE